# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| CAESAR MALDONADO<br><br>v.<br><br>SECTEK, INC. | CIVIL ACTION<br><br>NO. 19-693 |
|---|---|

**MEMORANDUM RE: MOTION TO DISMISS AND COMPEL ARBITRATION**

**Baylson, J.**                                                                                              **August 7, 2019**

## I. Introduction

Plaintiff, Caesar Maldonado, alleges that Defendant, SecTek, Inc., wrongfully terminated his employment as a security guard after he suffered a hernia in the course of his employment. Plaintiff seeks damages to redress his injuries and alleges three Counts:

1. **Count I**: Disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), as amended by the ADA Amendments Act ("ADAAA");

2. **Count II**: Disability discrimination in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"); and

3. **Count III**: Wrongful discharge pursuant to Shick v. Shirey, 716 A.2d 1231 (Pa. 1998), and the Pennsylvania Workers' Compensation Act.

Presently before this Court is Defendant's Motion to Dismiss and Compel Arbitration pursuant to the Federal Arbitration Act ("FAA") and the Collective Bargaining Agreement ("CBA") entered into by Defendant and the United Federation of Special Police and Security Officers, Inc. ("Union"), of which Plaintiff was a member. For the reasons discussed below, Defendant's Motion to Compel Arbitration is GRANTED, but the Motion to Dismiss is DENIED.

## II. Factual Background

### A. Parties and Events Alleged

Taking Plaintiff's factual allegations as true, the factual background is as follows. Plaintiff

is a citizen of the Commonwealth of Pennsylvania who resides in Philadelphia, Pennsylvania. (ECF 1, "Compl." ¶ 1.) Defendant is incorporated in Pennsylvania and has its principal place of business in Reston, Virginia. (Id. ¶ 2.) At all times relevant, Plaintiff was employed by Defendant as a security guard at Independence Hall. (Id. ¶¶ 9–10.) Plaintiff's position involved heavy lifting, frequent walking, carrying heavy equipment, and frequent bending. (Id. ¶ 11.)

On or about August 20, 2015, Plaintiff suffered an incarcerated umbilical hernia in the course and scope of his employment. (Id. ¶¶ 12, 17.) The next day, Plaintiff informed his supervisor, Dale White,[1] that he had been injured. (Id. ¶ 15.) Initially, Plaintiff's hernia was 2-3 centimeters in size, but over time and without treatment, the hernia increased in size to eight centimeters. (Id. ¶¶ 18–19.)

Plaintiff was scheduled to undergo surgery to repair the hernia on October 6, 2015. (Id. ¶ 21.) When Plaintiff asked White about his eligibility for short term disability, White told Plaintiff that he "did not have" short term disability. (Id. ¶ 22.) Ultimately, Plaintiff was unable to undergo surgery until July 2018. (Id. ¶ 23.)

On November 16, 2016, "it was alleged" that Plaintiff used a red dot laser pointer to signal to drivers who were stopped on the road in violation of Standard Operating Procedures. (Id. ¶ 26.) Plaintiff was terminated on or about November 30, 2016. (Id. ¶ 24.)[2] The November 16 incident was "[t]he stated reason" for Plaintiff's termination. (Id. ¶ 25.)[3]

Plaintiff filed his first workers' compensation Claim Petition with the Pennsylvania Human

---

[1] Plaintiff characterizes Dale White as a Defendant. (Id. ¶ 5.) Though the case caption refers to "Defendants," it only names one Defendant, SecTek, Inc., and the Complaint seeks relief from a singular Defendant.
[2] Plaintiff alleges that he was terminated both on November 30, 2016 and November 29, 2016. (Id. ¶¶ 24, 35.)
[3] Plaintiff does not allege who provided this reason or the context in which this reason was stated.

Relations Commission ("PHRC") on February 2, 2017. (Id. ¶ 27.) Plaintiff filed a second Claim Petition on June 20, 2017. (Id. ¶ 28.) On July 26, 2018, the PHRC sent Plaintiff a right-to-sue letter. (Id. ¶ 30; id. Ex. A.) The right-to-sue letter features a case number issued by the Equal Employment Opportunity Commission ("EEOC"), reflecting the dual filing arrangement between the PHRC and EEOC. (Compl. Ex. A.)[4]

### B. CBA

On December 10, 2014, representatives of the Union and Defendant executed the CBA "for guard services at Independence National Historic Park" in Philadelphia. (ECF 18, "Mot." Ex. 1, "CBA.") The CBA became effective on December 10, 2014 for all "non-economic terms," and on October 1, 2015 for all "economic terms." (Id. ¶ 1.) By the terms of the CBA, it remained in force until September 30, 2017. (Id. ¶ 19.1.) Plaintiff was not a signatory of the CBA, but Plaintiff does not dispute that he was a member of the Union while employed by Defendant. Article 12 of the CBA, entitled "Grievance Mediation and Arbitration Procedure," sets forth a multi-step grievance procedure, the last step of which is binding arbitration. (Id. ¶ 12.1.)

## III. Procedural History

The Complaint was filed in this Court on February 14, 2019 (ECF 1). On April 10, 2019, Plaintiff filed a Request for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) because more than 21 days had passed since Defendant had been served with the summons and Complaint on March 11, 2019 (ECF 8). On the same date, Plaintiff filed a Request for Trial by Jury (ECF 9). On April 26, 2019, Defendant filed a Motion for Extension of Time to Answer Plaintiff's Complaint pursuant to Rule 6(b)(1)(B) (ECF 10). The Court held a telephone

---

[4] No right-to-sue letter has been issued by the EEOC. At the hearing on the instant Motion, Plaintiff's counsel stated that a right-to-sue letter has been requested.

conference on Defendant's Motion on April 29, 2019, and the Court granted the Motion on the same date (ECF 11, 13). Pursuant to the Court's Order, Defendant filed an Answer to the Complaint on May 2, 2019 (ECF 15).

On May 13, 2019, following a Rule 16 conference on that date, the Court entered a Scheduling Order, which stated, "Defendant may move to compel Arbitration under Union agreement." (ECF 16, 17 ¶ 7.) Defendant filed a Motion to Compel Arbitration on May 18, 2019 (ECF 18). Defendant contends that the agreement to arbitrate employment-related disputes in the CBA is valid, and that Plaintiff's claims fall within the scope of that agreement. (Id. at 4–6[5].)

On May 28, 2019, Plaintiff filed a Response in opposition to Defendant's Motion (ECF 20, "Resp."). In the Response, Plaintiff contends that his claims do not fall within the scope of the CBA because he is not an "employee" as defined by the CBA. (Id. at 8–9[6].) According to Plaintiff, he is not an "employee" because he was terminated before he filed claims with the PHRC or initiated litigation. (Id.) Alternatively, Plaintiff argues that his claims are not subject to arbitration because the arbitration provision in the CBA does not contain a "clear and unmistakable" waiver of his right to bring statutory discrimination claims in federal court. (Id. at 9–10.) Finally, Plaintiff argues that even if the Court determines that the waiver is "clear and unmistakable," the CBA should not be enforced because Congress did not intend for arbitrators to enforce the ADA. (Id. at 10–12.)

On June 3, 2019, Defendant filed a Reply in support of the Motion (ECF 21, "Rep."). In the Reply, Defendant argues that Plaintiff is an "employee" for purposes of the CBA because his

---

[5] Because Defendant's Motion does not include page numbers, the Court refers to the page numbers of the ECF filing.
[6] As Plaintiff's Response does not include page numbers, the Court refers to the page numbers of the ECF filing.

claims are based on allegations that arose during the scope of his employment. (Id. at 1–2.) Defendant further argues that the CBA "clearly and unmistakably" covers Plaintiff's claims. (Id. at 2–5.) Finally, Defendant contends that the ADA, by its terms, encourages arbitration to resolve disputes. (Id. at 5.)

On June 20, 2019, Plaintiff filed a Motion for Leave to File a Surreply, which the Court granted (ECF 24, 25). As a result, Plaintiff filed a Surreply in opposition to the Motion on July 17, 2019 (ECF 26, "Surrep.") In the Surreply, Plaintiff contends that the CBA does not contain a "clear and unmistakable" waiver of Plaintiff's right to pursue his PHRA claim in a judicial forum because the arbitration provision does not expressly reference the PHRA. (Id. at 2–4[7].)

The next day, the Court held a hearing on the Motion to Dismiss and Compel Arbitration (ECF 25).[8] During the hearing, the Court invited the parties to submit letters providing citations to precedential judicial decisions in further support of their positions. On July 25, 2019, both parties submitted such letters (ECF 29, 30). In Plaintiff's letter, Plaintiff stipulated to strike the wrongful termination claim–Count III of the Complaint. (See ECF 30.) As a result, only the ADA and PHRA disability discrimination claims (Counts I and II) remain. Magistrate Judge Strawbridge has scheduled a Settlement Conference for August 28, 2019 (ECF 28).

## IV. Legal Standard

The FAA, which governs the arbitration and arbitrability of disputes, provides that as a matter of federal law, "[a] written provision" in a contract evidencing an intention to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because the FAA

---

[7] As the Surreply does not contain page numbers, the Court cites the page numbers of the ECF filing.
[8] The audio file of the hearing is available at ECF 31.

reflects a strong federal policy favoring arbitration, courts must "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). "The FAA thereby places arbitration agreements on an equal footing with other contracts, . . . and requires courts to enforce them according to their terms." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67–68 (2010).

When deciding a motion to compel arbitration, a court must first determine the applicable standard of review. The Third Circuit has instructed that "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel should be considered under a Rule 12(b)(6) standard without discovery's delay.'" Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013) (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011) (Dalzell, J.)); see also CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 168 n.2 (3d Cir. 2014) ("Because the arbitration clause at issue appears in a contract relied upon in the Complaint, we resolve the motion to compel arbitration under a motion to dismiss standard."); but see Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014) ("In assessing the motion to compel arbitration itself, we apply the standard for summary judgment in Rule 56(a) . . . .").

However, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the Rule 56 summary judgment standard applies. Guidotti, 716 F.3d at 776; Lawson v. City of Phila., No. 18-1912, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019) (Jones, J.) ("[T]he Rule 12(b)(6) standard is appropriate unless 'the plaintiff has responded to a motion to compel arbitration with additional

facts sufficient to place the agreement to arbitrate at issue.'" (quoting <u>Silfee v. Auto. Data Processing, Inc.</u>, 696 F. App'x 576, 578 (3d Cir. 2017))). Where the summary judgment standard is applicable, "the court may order limited briefing and discovery on the issue of arbitrability." <u>Lawson</u>, 2019 WL 934976, at *2 (citing <u>Guidotti</u>, 716 F.3d at 776).

Here, both parties provide the Rule 12(b)(6) standard as the applicable standard. (Mot. at 3; Resp. at 4.) Though the Complaint does not reference or attach the CBA, the CBA is attached as an exhibit to the Motion and the Response, and Plaintiff does not provide any facts challenging its validity. District judges in this Circuit have applied a Rule 12(b)(6) standard in similar factual situations. <u>See, e.g.</u>, <u>Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n</u>, No. 19-83, 2019 WL 2077731, at *3 (E.D. Pa. May 10, 2019) (Kearney, J.) (applying the Rule 12(b)(6) standard even though the complaint did not refer to the arbitration agreement because the plaintiff's allegations fell within the scope of the agreement); <u>Curtis v. Cintas Corp.</u>, 229 F. Supp. 3d 312, 315–16 (E.D. Pa. 2017) (Kelly, J.) (concluding that the Rule 12(b)(6) standard applied where the complaint did not mention the arbitration agreement because the agreement, which was attached to the defendant's motion, was "clearly integral to [the plaintiff's] claims," and the plaintiff did not contest the agreement's authenticity); <u>see also</u> <u>Hewitt v. Rose Grp.</u>, No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016) (McHugh, J.) ("It would frustrate the purposes of the [FAA] if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints."). Accordingly, the Court concludes that the Rule 12(b)(6) standard applies to the instant Motion.

In considering a motion under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." <u>Warren Gen.</u>

7

Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In evaluating a motion under Rule 12(b)(6), a court may consider "undisputedly authentic documents" before the court on which a plaintiff's claims are based, such the CBA in this case. See CardioNet, Inc., 751 F.3d at 168 n.2 (noting that the court was "permitted to consider the substance of the contracts that ostensibly compel arbitration" when reviewing the district court's grant of a motion to dismiss and compel arbitration).

**V. Discussion**

As noted above, Plaintiff brings claims of disability discrimination under the ADA (Count I) and the PHRA (Count II). The Complaint sets forth similar allegations in both Counts. At issue

8

is whether Plaintiff's claims are subject to arbitration pursuant to the CBA executed by Defendant and the Union.

To compel arbitration under the FAA, a court must conclude that: (1) the parties entered into a valid agreement to arbitrate; and (2) the plaintiff's claims fall within the scope of that agreement. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3rd Cir. 2009). As the parties do not dispute the validity of the CBA, the Court proceeds to determine whether the CBA requires arbitration of Plaintiff's claims.

### A. Whether Plaintiff, a Terminated "Employee," is Subject to the CBA

The parties first dispute whether Plaintiff is an "employee" under the CBA whose claims must be submitted to the CBA's grievance procedure, the last step of which is arbitration. Neither party cites any precedential judicial decisions discussing how this Court should analyze this issue. However, the Supreme Court has held that "[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator." United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 567–68 (1960). In that case, a court's role "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." Id. at 568.

Here, Article 12 of the CBA sets forth a grievance procedure, including binding arbitration, to resolve "any and all disputes between any employee of the Company (and the Union and the Company) arising out of or relating to the employee's employment with the Company." (CBA ¶ 12.1.) The grievance procedure applies "whenever an employee covered by [the CBA] . . . asserts a . . . statutory claim other than solely a claim that the Company has failed to comply with the terms of [the CBA]." (Id. ¶ 12.13.) The CBA defines "employees" "[w]henever used in

9

[the CBA]" as "full-time officers and screeners employed by the Employer who are scheduled to work more than 30 hours a week." (Id. ¶ 1.2.) The definition of "employees" excludes "all clerical employees, managerial personnel, project managers, and supervisors as defined by the National Labor Relations Act, and all other personnel," as well as "persons enrolled in or participating in pre-assignment training programs offered by the Company." (Id.)

Plaintiff argues that his claims are not subject to arbitration because he is not an "employee" as defined by Article 1.2 of the CBA. (Resp. at 8.) Specifically, Plaintiff contends that because he was discharged before he filed his first Claim Petition with the PHRC in February 2017 and before he initiated this action in February 2019, Plaintiff is no longer "scheduled to work more than 30 hours a week." (See id.; CBA ¶ 1.2.) Defendant, on the other hand, contends that because Plaintiff's claims "aris[e] out of or relat[e] to [his] employment with the Company," Plaintiff is an "employee" whose claims are governed by the CBA. (Rep. at 2.)

The Court concludes that it is for the arbitrator to determine whether a former employee, such as Plaintiff, is an "employee covered by [the CBA]." (CBA ¶ 12.13.) The CBA states that "the parties agree that in the event any complaint or grievance arises over the interpretation or application of any provision of this Agreement, there will be an earnest effort to settle such complaint or grievances by the following procedure, the last step of which will be binding arbitration." (CBA ¶ 12.1.) The Third Circuit has interpreted similar provisions to reflect the parties' agreement to submit issues of contract interpretation to the arbitrator. See, e.g., Local 103 of Int'l Union of Elec., Radio & Mach. Workers v. RCA Corp., 516 F.2d 1336, 1340 (3d Cir. 1975) (holding that disputes over the interpretation of an arbitration provision in a CBA were to be resolved by the arbitrator where the CBA stated that, in the event of a "dispute or difference . . . with respect to the interpretation or application of any provision of this Agreement, there shall

10

be an earnest effort made to settle or dispose of such matters promptly . . . in the manner provided in this Grievance Procedure"). As a result, the Court proceeds to determine whether Plaintiff's claims, on their face, are governed by the arbitration provision of the CBA. See United Steelworkers, 363 U.S. at 567–68.

### B. Waiver of Plaintiff's Right to Bring Statutory Claims in Federal Court

As set forth above, the parties disagree over whether the CBA amounts to a waiver of Plaintiff's right to litigate his claims. (See Resp. at 9–10; Rep. at 2–5; Surrep. at 2–4.) While an employee may generally pursue his federal statutory discrimination claims in federal court, "an employee may 'waive [ ] . . . the right to seek relief from a court in the first instance.'" Harrell v. Kellogg Co., 892 F. Supp. 2d 716, 720 (E.D. Pa. 2012) (Brody, J.) (alteration in original) (quoting 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 265–66 (2009)). Though a presumption of arbitrability generally governs a court's interpretation of an arbitration provision in a CBA, this presumption is inapplicable in the context of statutory discrimination claims. Compare Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, 595 F.3d 128, 131 (3d Cir. 2010) ("[T]he inclusion of a broad arbitration clause in a collective bargaining agreement gives rise to a presumption of arbitrability which may be rebutted only by 'the most forceful evidence of a purpose to exclude the claim from arbitration.'" (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986))), and United Steelworkers of Am. v. Lukens Steel Co., 969 F.2d 1468, 1475 (3d Cir. 1992) (Where a "collective bargaining agreement contains a broad grievance and arbitration clause, the presumption of arbitrability applies–we presume that the parties chose arbitration."), with Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 77–79 (1998) (holding that an ADA claim was not subject to a presumption of arbitrability pursuant to a CBA).

Rather, "a court may compel arbitration of a plaintiff's federal statutory claim [under a

11

CBA] when (1) the arbitration provision clearly and unmistakably waives the employee's ability to vindicate his or her federal statutory right in court; and (2) the federal statute does not exclude arbitration as an appropriate forum." Jones v. Does 1-10, 857 F.3d 508, 512 (3d Cir. 2017); see also Pyett, 556 U.S. at 258 ("[A]n agreement to arbitrate statutory antidiscrimination claims must be 'explicitly stated' in the collective-bargaining agreement." (quoting Wright, 525 U.S. at 80)).

The Third Circuit has not addressed whether the "clear and unmistakable" standard applies to state law claims, but at least one judge in this District has concluded that it does. See Fralin v. Cty. of Bucks, 296 F. Supp. 2d 609, 615 (E.D. Pa. 2003) (DuBois, J.) ("A discrimination claim based on a statute, such as . . . the PHRA, is not subject to arbitration under a grievance procedure in a [CBA] unless [the] plaintiff clearly and unmistakably waives her right to a judicial forum in the agreement."). As Defendant does not contest that waiver of Plaintiff's PHRA claim must be "clear and unmistakable," the Court presumes that the same standard applies to both claims.

### i. "Clear and Unmistakable" Waiver of Plaintiff's Claims

#### 1. Applicable Rules

Neither the Supreme Court nor the Third Circuit has expressly defined what amounts to "clear and unmistakable" or "explicit" waiver of the right to bring statutory claims. However, the evolving jurisprudence in the Supreme Court and the Third Circuit concerning such union-negotiated waivers provides instruction on what does, and what does not, pass muster.

First, in Wright, the Supreme Court considered whether an employee waived his right to bring an ADA claim in federal court pursuant to a CBA. 525 U.S. at 72. The Supreme Court held that a union-negotiated waiver of a federal statutory claim "must be clear and unmistakable" to be enforceable. Id. at 80. The CBA at issue contained a "very general" arbitration clause, which stated that "[m]atters under dispute" were subject to arbitration. Id. Another clause in the CBA

12

provided that the "Agreement [was] intended to cover all matters affecting wages, hours, and other terms and conditions of employment." Id. at 81. As the CBA "contain[ed] no explicit incorporation of statutory antidiscrimination requirements" and did not "mak[e] compliance with the ADA a contractual commitment . . . subject to the arbitration clause," the Supreme Court held that the CBA did not contain a "clear and unmistakable" waiver of the employee's right to litigate his ADA claim. Id. at 80–82.

Most recently, in Pyett, the Supreme Court reiterated that arbitration provisions in CBAs must "clearly and unmistakably" require union members to arbitrate statutory discrimination claims to be enforceable. 556 U.S. at 258, 274. The CBA included a nondiscrimination provision prohibiting "discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to . . . the Age Discrimination in Employment Act." Id. at 252. As the parties conceded on appeal that the agreement to arbitrate claims under the Age Discrimination in Employment Act was "explicitly stated" in the CBA, the Court did not reach this issue. Id. at 272. However, in its analysis, the Supreme Court reaffirmed its narrow holding in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), that a general antidiscrimination provision in a CBA, which prohibited "discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry," did not prevent an employee from bringing a Title VII claim in federal court. Id. at 39; Pyett, 556 U.S. at 260–65. In Gardner-Denver, the Supreme Court explained that the CBA did not mandate compulsory arbitration of the employee's Title VII claim because the antidiscrimination provision did not expressly reference Title VII. 415 U.S. at 39–41.

When considering Wright and its progeny, district judges in this Circuit have stated that "a

13

CBA with a general arbitration provision and a nondiscrimination provision that does not expressly mention the federal antidiscrimination statute under which the employee seeks redress[] does not contain an explicit waiver." Harrell, 892 F. Supp. 2d at 724 (concluding that a nondiscrimination provision in a CBA stating that "[t]he Company and Union agree to abide by the [ADA]" was not an explicit waiver of a former employee's right to bring race discrimination claims under 42 U.S.C. § 1981); Fralin, 296 F. Supp. 2d at 616 (concluding that a nondiscrimination clause in a CBA prohibiting discrimination on the basis of "race, sex, creed, color, sex [sic], marital status, age, national origin or union membership" did not require an employee to arbitrate a PHRA claim) (internal quotation marks omitted); see also Jones, 857 F.3d at 513 n.17 (noting that a CBA requiring arbitration of "[a]ll claims that an employee has been discriminated against . . . in violation of applicable federal, state or local law" did not contain a "clear and unmistakable" waiver of employees' rights to vindicate FLSA claims in federal court).

### 2. Application

Here, as noted above, Article 12 of the CBA sets forth a multi-step grievance procedure, the final step of which is arbitration. Article 12.1, entitled "General Provision," provides, in relevant part:

> The parties expressly acknowledge that the duty to use this grievance procedure, including binding arbitration, includes any and all disputes between any employee and the Company (and the Union and the Company) arising out of or relating to any employee's employment with the Company, whether grounded in contract, tort or statutory law (including but not limited to federal, state and local civil rights and employment laws such as . . . the Americans with Disabilities Act . . . .). This duty to arbitrate shall apply to all claims that the employee believes he/she may have against the Company, its affiliated companies or any of its officers, owners, directors, employees or agents.

(CBA ¶ 12.1.) Under the CBA, if the grievance procedure fails to resolve a grievance, then the grievance "may be processed by the Union to arbitration pursuant to Article 12/ [sic] or Article

12.13 as applicable." (Id. ¶ 12.6.)[9] Article 12.13, entitled "Non-Contract Claims," states:

> [T]he following rules shall apply whenever an employee covered by this Agreement or the Union asserts a common law or statutory claim other than solely a claim that the Company has failed to comply with the terms of this Agreement. . . .
>
> If the dispute has not been resolved pursuant to the procedures outlined in Articles 12.1 through 12.5, the resolution of this claim shall be resolved exclusively by means of binding arbitration . . . .

(Id. ¶ 12.13.) Finally, the CBA contains an explicit antidiscrimination provision, which reads, in relevant part:

> The Company and the Union agree that they shall each comply with all federal, state, and local . . . employment discrimination laws, . . . and will not discriminate against any employee with regard to race, color, religion, age, sex, national origin, or disability in violation of such laws. Such laws shall include, but not be limited to . . . the Americans with Disabilities Act . . . . Any claim that the foregoing provision has been breached, or that the Company has breached any federal, state, or local civil rights law, shall be resolved exclusively pursuant to binding arbitration . . . after exhaustion of the parties' internal dispute resolution procedures . . . .

(Id. ¶ 4.) The arbitration provision in Article 12 and the antidiscrimination provision in Article 4 both expressly mention the ADA, but not the PHRA.

However, the arbitration provision of the CBA makes clear that disputes between an "employee" and Defendant "arising out of or relating to any employee's employment with the Company, whether grounded in . . . federal [or] state . . . civil rights and employment laws" must be submitted to the grievance procedure, including binding arbitration. (Id. ¶ 12.1.) The CBA also provides that "[a]ny claim that . . . the Company has breached any federal [or] state . . . civil rights law" or "employment discrimination law[]" is subject to arbitration. (Id. ¶ 4.) This language amounts to a "clear and unmistakable" waiver of Plaintiff's right to bring a disability discrimination claim under the PHRA in federal court. See Jones, 857 F.3d at 513 n.17 (suggesting

---

[9] Plaintiff does not allege that he attempted to initiate the grievance procedure or that the Union declined to arbitrate his claims.

that the arbitration clause in a CBA, which required arbitration of "[a]ll claims that an employee has been discriminated against . . . in violation of applicable federal, state or local law," included an "explicit[]" waiver of such claims).

Unlike the CBA at issue in Wright, which contained a "very general" arbitration clause mandating arbitration of "[m]atters under dispute," here, Article 12 specifically requires arbitration of "disputes between any employee and the Company . . . arising out of or relating to any employee's employment," including disputes based on "federal [or] state . . . civil rights and employment laws such as . . . the [ADA]." Wright, 525 U.S. at 80 (alteration in original); (CBA ¶ 12.1.) Whereas the CBA in Wright "contain[ed] no explicit incorporation of statutory antidiscrimination requirements," in this case, Article 4 provides a non-exhaustive list of statutory antidiscrimination laws. Wright, 525 U.S. at 80; (CBA ¶ 4.)

Further, in contrast to the nondiscrimination provision in Harrell, which only explicitly addressed one statute that did not pertain to the employee's claims, here, Article 4 expressly mentions the ADA as an example of "employment discrimination laws" governing Plaintiff's employment. Harrell, 892 F. Supp. 2d at 720; (CBA ¶ 4.) Article 4 of the CBA, which requires employees to arbitrate claims that Defendant violated "any federal [or] state . . . civil rights law" or "employment discrimination law[]," is also distinct from the CBA in Fralin, which did not explicitly require employees to arbitrate any statutory discrimination claims. (CBA ¶ 4); Fralin, 296 F. Supp. 2d at 616. In sum, the Court concludes that the CBA contains a "clear and unmistakable" waiver of Plaintiff's right to bring his ADA and PHRA claims in a judicial forum.

### ii. Whether the ADA Precludes Arbitration as an Appropriate Forum

As the Court concludes that the CBA "clearly and unmistakably" waives Plaintiff's right to litigate the ADA and PHRA claims in federal court, the Court turns to Plaintiff's contention that

Congress intended the ADA to be enforced by courts, not by arbitration. See Jones, 857 F.3d at 512. Plaintiff's argument is without merit.

The Supreme Court has stated that parties should be held to an agreement to arbitrate federal statutory claims "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Contrary to Plaintiff's position, the plain language of the ADA evinces Congress's intent to encourage arbitration, not to preclude it. See 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter."); see also Stanton v. Prudential Ins. Co., No. 98-4989, 1999 WL 236603, at *6 (E.D. Pa. Apr. 20, 1999) (Shapiro, J.) (noting that "[n]umerous appellate court decisions, finding no congressional intent to foreclose arbitration of ADA claims, uphold ADA arbitration"). In sum, as the CBA is a valid, enforceable agreement requiring Plaintiff to arbitrate his claims, the Court will grant Defendant's Motion to Compel Arbitration.

### C. Staying the Dispute

Having concluded that Plaintiff's claims are subject to arbitration, the Court considers whether to dismiss the Complaint, as Defendant requests, or stay the action pending Plaintiff's submission to the grievance procedure outlined in the CBA. The Third Circuit has stated that "the plain language of [FAA] § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004). However, there is no such limitation on a district court's discretion where neither party has requested a stay, as in this case. See Mendez v. Puerto Rican Int'l Cos., 553 F.3d 709, 712 (3d Cir. 2009) ("Th[e] decision [to stay litigation] is one left to the district court . . . as a

matter of its discretion to control its docket." (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983))); see also Mullen-Moore v. REB Enters., Inc., No. 16-935, 2016 WL 3019274, at *1 (E.D. Pa. May 26, 2016) (Baylson, J.) (staying the action pending arbitration where the defendant moved to compel arbitration and dismiss the complaint).

The Court is inclined to stay the proceeding because the CBA does not contain an alternative path for Plaintiff to pursue claims independently if the Union declines to arbitrate. (See CBA ¶ 12.1 ("[T]he Union has the responsibility for reviewing and submitting only those grievances that are considered to have validity in its good faith judgment.")); see also Medversant Techs., LLC v. Leverage Health Sols., LLC, 114 F. Supp. 3d 290, 299 (E.D. Pa. 2015) (Robreno, J.) (exercising discretion to stay an action where a stay would have served the interests of judicial economy and efficiency).

Further, at least one judge in this District has concluded that Pennsylvania law requires a stay of judicial proceedings pending arbitration where a plaintiff alleges a PHRA violation, as in this case. See Asberry-Jones, 2019 WL 2077731, at *6 (staying an action even though neither party requested a stay pursuant to the Pennsylvania Arbitration Act (citing 42 Pa.C.S. § 7304(d))). Therefore, the Court will stay this matter pending Plaintiff's submission to the grievance procedure in the CBA, which includes arbitration.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion to Compel Arbitration is granted, and the Motion to Dismiss is denied. This Court shall stay the action and mark it as administratively closed pending arbitration.

An appropriate Order follows.

O:\CIVIL 19\19-693 Madonado v Sectek\19cv693 Memo re Mot. to Compel Arb. 08072019.docx